## MASONS' FRATERNAL ACCIDENT ASSOCIATION *v.* RILEY.

Opinion delivered April 30, 1898.

1.   ACCIDENT POLICY—INTENTIONAL KILLING—EVIDENCE.—In an action upon an accident policy, which provided that the insurer should not be liable on account of death resulting from injuries intentionally inflicted upon assured by himself or another, where it is shown that insured was found dead from gunshot wounds near the residence of S., defendant may prove that insured and S. had previously disagreed and disputed about a business transaction.   (Page 268.)

2. EVIDENCE—RES GESTAE.—Where the defense to an action on an accident policy was that insured was intentionally killed by another, it is competent to show that, a few minutes after the killing, S. surrendered to an officer, saying that he had killed insured while retreating; but proof of what S. said on the day after the killing, being to the same effect, is too remote; so also as to his testimony when he was subsequently put upon trial for killing insured. (Page 268.)

3. SAME—ADMISSIBILITY.—In an action on an accident policy it is not admissible to introduce in evidence an indictment of a certain person for killing insured, to show that such killing was intentional; nor is it admissible for the same purpose to introduce the record of a pardon of that person for such killing. (Page 268.)

4. INSTRUCTION—WHEN MISLEADING.—An instruction that the jury "will indulge in no presumptions, but they will try the issues between the parties strictly according to the evidence introduced, and that no suppositions shall be indulged in by them," is misleading where the evidence as to a material issue was partly circumstantial. (Page 268.)

5. FRATERNAL ASSOCIATION—BENEFIT CERTIFICATE—LIABILITY.—A fraternal accident association which by its certificate undertakes to pay a certain sum on the death of insured, provided the amount realized by the association from one assessment of two dollars on all holders of certificates assessable at the date of the accident shall be equal to that sum, is *prima facie* bound, when the right to recover is shown, to pay the maximum amount of its liability, as shown in the contract, and the burden is on it to prove that a less amount would have been realized by an assessment. (Page 269.)

Appeal from Jefferson Circuit Court.

JOHN M. ELLIOTT, Judge.

*Irving Reinberger* and *N. T. White*, for appellants.

The proper proceeding, under the terms of the policy, would be a suit in equity for specific performance of the contract to make an assessment for the payment of the policy. 24 Fed. 685; 114 Ill. 108; 72 Ia. 191; 50 Mo. 29. If an action at law were proper upon such a contract, the complaint fails to state facts sufficient to constitute a cause of action, because: (1) It fails to allege a breach of the covenant to make the assessment, etc. 3 Enc. Pl. & Pr. 653; 5 *ib.* 369, 370; 3 *ib.* 655; 5 *ib.* 376; 60 Cal. 341; Bacon, Ben. Soc. § 453, and cases; 94 Mo. 35; 89 Cal. 599; 48 Conn. 98; 20 Ill. App. 595; 24 Fed. 685. (2) It fails to recite with particularity the ultimate facts relied upon as tending to prove that the shooting was accidental. 4 Enc. Pl. & Pr. 605. In the inquiry as to

whether death was accidental or designed, facts apparently collateral become relevant if they tend to show motive in any one for the act. Jones, Evidence, §§ 138, 142. So with any circumstance tending to strengthen or weaken either of these theories. 42 Ark. 542; Jones, Ev. §§ 138, 142; 32 S. W. 31. Acts and declarations which are explanatory of a transaction, and which take place either at the time of the main event, so as to emanate directly from the state of mind which induced the main event, or which take place subsequently, but under circumstances which show them not to be premeditated or concocted, are admissible in evidence as part of the *res gestæ.* 43 Ark. 99; 1 Taylor, Ev. (7 Ed.) § 588; 48 Ark. 338; Whart. Evid. § 258–267; 116 Ind. 566; 43 Ark. 293; Jones Ev. § 351; 8 Wall. 401; 2 Bing. 99; 32 S. W. 31; 2 Dill. (U.S.) 154; 85 Ga. 751; 61 Ill. App. 140; 2 Cinn. Sup. Ct. Rep. 98; S. C. 4 Bigelow, L. & A. Rep. 366; 40 S. W. 910; Starkie, Evid. 47; 24 Pick. 244, 245. Declarations against interest of declarant are admissible. Jones, Ev. § 327; 5 Am. & Eng. Enc. Law, 36; Steph. Ev. art. 28. Confessions of guilt are presumed to be true. Starkie, Evid. (9 Am. Ed.) 744. It is revelant to put in evidence any circumstance which tends to make the proposition at issue more or less reasonable, or which tends to show motive, where it is material. Whart. Ev. § 21; Steph. Ev. art. 1; *ib.* 7; *ib.* 12; Jones, Ev. § 141–2; 147 U. S. 150; 11 Pa. St. 307. It was also error for the court to refuse to allow appellant to prove testimony of the slayer of insured, given on his trial for the killing, because the appellee and his *cestui que trust* were privy in law to the state in the prosecution. 1 Greenl. Ev. § 164; 14 Ind. App. 611; 81 Ga. 668. The letter of appellant, replying to notification of death of insured, should have been admitted. 15 Am. & Eng. Enc. Law, 684. The first instruction given for appellee is erroneous, because it makes appellant liable for the natural death of insured, when its contract of insurance was against accidental death only. 87 Ky. 300; 38 Mo. App. 385. It was error for the court to tell the jury that they were not allowed to indulge any presumption as to whether deceased was murdered or not. The presumption of crime or violence was one of fact, and the jury was entitled to consider all facts and circumstances introduced in evidence,

in arriving at their conclusion. 1 Ph. Ev. (C. & H. notes,) p. 598; 1 Greenl. Ev. (14 Ed.) § 14; Best's Ev. (Am. Ed.) § 303; 127 U. S. 667; 34 S. W. 801. Fraud may be established by indirect evidence. 15 Tex. 219; 64 Ala. 525; 5 B. Mon. 43; 51 Ill. 327; 48 Ill. 323; 49 *id.* 62; 25 Mich. 367; 47 Tex. 138; 6 Mo. App. 6. Death by intentional homicide is not to be regarded as incidental. 30 S. W. 879; 80 Fed. 368; 12 N. Y. 472. It was also error to instruct the jury that the measure of damages was the maximum amount named in the certificate. The contract of the insurer was to pay as much (not exceeding a certain limit) ·as should be raised by assessment on the members at a certain rate. This was the measure of their liability, if they were liable. 24 Fed. 685; 68 Md. 465; 64 N. H. 291; 11 N. Y. Supp. 462; 55 Hun, 574; 46 Hun, 426; 51 Hun, 495; 29 N. Y. Supp. 421; Sand. & H. Dig., §§ 5761, 5782; 4 Ark. 534; 2 N. Y. Supp. 481. Appellee's proof actually established appellant's defense of death by intentional homicide; hence the court should not have allowed a recovery by appellee. 57 Ark. 461; Bliss, Life Ins. § 259; 41 S. W. 9; 30 *ib.* 879; 127 U. S. 667; 38 Mo. App. 385; 77 Cal. 246; 15 Col. 351; 98 Mich. 338; 63 N. W. 276.

BATTLE J. This action was instituted by W. Riley, as administrator of J. H. Culpepper, deceased, against the Masons' Fraternal Accident Association, and is based on the obligation of the association, called a certificate, whereby it constituted J. H. Culpepper one of its certificate holders, and agreed to pay to his executors or administrators the sum of five thousand dollars in the event he should die from bodily injury caused by external, violent, and accidental means, within ninety days after the accident so causing it, upon condition, however, that this sum was not to be paid unless the amount "realized by the association from one assessment of two dollars, made and assessed upon all assessable holders of certificates assessable at the date of the accident," should be equal to such sum; and, in the event it should not, the sum so realized should be paid, and nothing more; and it was provided that the association would not agree or be liable to pay any sum of money on account of death resulting, wholly or partly, directly

or indirectly, from injuries intentionally inflicted upon Culpepper by himself or any other person.

Plaintiff, among other things, alleged that Culpepper was accidentally killed on the 10th of October, 1892; that, at the time of the accident, "there were more than twenty-five hundred of assessable certificates of the defendant association liable to assessment for the purpose of accumulating a fund to an amount sufficient to pay the plaintiff and the beneficiaries in said policy the said sum of five thousand dollars;" and that no part of the five thousand dollars has been paid.

The defendant answered "that it is provided in the contract sued on that its liability should not cover death resulting, wholly or partly, directly or indirectly, from injuries intentionally inflicted upon the insured by himself or any other person, and that the insured had come to his death wholly and directly from injuries intentionally inflicted upon him by on Isreal Stewart. That by the terms of the contract defendant is not liable to pay, nor plaintiff entitled to receive, a greater sum than might be realized by defendant, not, however, exceeding $5,000 from one assessment, of not exceeding $2, levied upon each and all assessable holders of its assessable certificates at the time of the insured's death; and that defendant denies that the sum of $5,000, or any other sum, was or could be raised by one such assessment."

E. D. Culpepper testified: He was the father J. H. Culpepper. He last saw his son alive between 11 and 12 o'clock a. m. on the 10th of October, 1892. He, the son, was on horseback, on the Boyd place, immediately opposite Pine Bluff, on the Arkansas river. He next saw his son, J. H. Culpepper, twenty or thirty minutes later, lying dead, face downward, on the ground, near the residence on the Boyd place, then occupied by Isreal Stewart, with gunshot wounds on his body, extending from lower part of shoulder blades to back of his head, behind the ears. Shortly before this, he (witness) heard the report of a gun. At this time he was eighty or ninety yards from the residence. As soon as he could walk in the gate, some five or six steps, he saw the head of Stewart extended beyond the door case, looking out the door, but could not see any other portion of his body. He saw no one else,

His son's body then lay about twenty steps from Stewart. The defendant offered to prove by the witness that his son and Stewart had previously disagreed and disputed about some mules, and the court would not permit it to do so, and it excepted.

J. L. Goree testified that he examined the body of J. H. Culpepper after he was dead, and that he died from wounds inflicted with a gun by some one other than the deceased; that the wounds ranged upwards, and indicated that they were inflicted while deceased was leaning forward.

The defendant, having proved that Israel Stewart died before trial in this action, offered to prove by A. J. Stewart what Israel Stewart said to him about the killing in a conversation which occurred on the day after Culpepper was shot, and the court refused to admit the testimony.

It also offered to prove by J. T. Murdaugh that Israel Stewart walked across the bridge over the river at Pine Bluff, with a gun on his shoulder, and, delivering to him his gun, and saying, "I am your prisoner," surrendered, and witness took him and confined him in jail. At this time Stewart was very much affected and fatigued, and told witness that J. H. Culpepper had abused and attacked him, and upon resistance fled, and he (Stewart) shot him with a shotgun, and killed him while he was retreating. And the court refused to admit the testimony.

The defendant offered to prove the same thing by H. King White, and that it occurred on the 10th of October, 1892, about thirty minutes after the killing; and that he heard Stewart testify in a trial for killing Culpepper, and that he testified to the same thing he related, as before stated; and the court excluded the testimony.

Defendant also offered in evidence the records of the circuit court of Jefferson county, Arkansas, showing that at its September term, 1892, Israel Stewart was indicted for the murder of J. H. Culpepper in said county, on October 10, 1892, that a bench warrant was issued for his arrest, and he was arrested thereunder; that on November 1, 1892, he was arraigned upon said indictment, and pleaded not guilty thereto, and that,

on the same day, upon his application, the venue of the prosecution was changed to Arkansas county.   The court excluded these records, and defendant excepted.

Defendant also offered in evidence, and the court excluded, a duly certified copy of the record of pardons by the governor of the state of Arkansas, showing the pardon of Isreal Stewart of and from the consequences of his sentence by the Arkansas circuit court, at its March term, 1893, to the state penitentiary for five years, for the killing of J. H. Culpepper, and the defendant excepted.

The court instructed the jury, over the objections of the defendant, as follows;   "The court instructs the jury that in the trial of this case they will indulge in no presumptions, but they will try the issues between the parties strictly according to the evidence introduced; and that no suppositions shall be indulged in by them."   And refused to instruct the jury, at the request of the defendant, as follows:   (2) "The court instructs the jury that even if the insured, J. H. Culpepper, did not die from any cause excepted in the certificate, and all the conditions thereof have been complied with by the plaintiff and those he represents, still the only obligation on the defendant is to levy and collect an assessment to meet the plaintiff's claim in accordance with the terms of the certificate sued on; and that if the defendant has failed to levy or collect such an assessment, the jury can award the plaintiff only nominal damages.   And the jury are further instructed that they cannot award plaintiff even nominal damages, unless they also believe from the evidence that the plaintiff demanded and defendant failed to lay such assessment, and that the burden of proving such a demand and failure is upon the plaintiff."   (3)   "Even though the jury believe from the evidence that J. H. Culpepper did not come to his death by any means excepted in the certificate sued on, and that all of the conditions thereof have been complied with by him and his representatives, still the jury cannot award the plaintiff a greater sum, not, however, exceeding $5,000, than they shall believe from the evidence was or could be realized from an assessment levied and collected in accordance with the terms of the certificate; and the burden of proving the levying of such assessment, and the amount realized, or which could

have been realized, thereunder by the defendant, is upon the plaintiff."

The jury returned a verdict in favor of the plaintiff for $5,821.66, and, judgment having been rendered against the defendant for that amount, it appealed.

The court erred in excluding the testimony of E. D. Culpepper to the effect that his son and Israel Stewart had disagreed and disputed about some business transaction. It was competent to show the existence of ill feeling between them, and for the purpose of throwing light upon the manner of the killing of Culpepper, and for the purpose of showing that Stewart had a motive for killing him, or that there might have been a difficulty between them which resulted in the intentional killing of the former by the latter.

The testimony of White and Murdaugh to the effect that Stewart, within thirty minutes after the killing, seemingly very much affected, surrendered himself, and stated that he had killed Culpepper while retreating, should have been admitted. In connection with the testimony of E. D. Culpepper, the testimony excluded as to the disagreement and disputes of J. H. Culpepper and Stewart, and the testimony of Goree that the wounds indicated that they were inflicted while Culpepper was leaning forward, tending to point to Stewart as the party who had killed Culpepper, and that he had done so intentionally. The statement of Stewart, within thirty minutes after the killing, at the time he surrendered, derives a degree of credit from the circumstances and facts of the case, independently of any credit that could be given to Stewart, and by its credit so derived points to the guilty party and the manner of the killing, and for this reason was admissible. *Greenfield* v. *People*, 85 N. Y. 75; *Woolfolk* v. *State*, 81 Ga. 565; *Standard, etc., Ins. Co.* v. *Askew*, 32 S. W. Rep. 31; 1 Starkie Evidence, 47.

The other testimony excluded was too remote, detached from, and disconnected, with, the killing, and should not have been admitted.

The court erred in instructing the jury that they should not indulge in presumptions, but should try the issues strictly according to the evidence introduced. This was misleading, and calculated to lead the jury to believe that an intentional

killing of Culpepper could not be proved except by direct and positive evidence. This is not true. It may be shown by circumstantial evidence, and the jury may infer it from facts and circumstance proved which justify the inference.

As to the burden of proving the amount realized, or which could have been realized, by an assessment levied according to the terms of the contract sued on, the authorities are not agreed. We are of the opinion that, where the party suing on such contracts is entitled to recover, the society or association which agrees to make the assessment upon its members, and to pay the amount realized, not exceeding a certain amount, to the beneficiaries named in the contract, is *"prima facie* bound to pay the *maximum* amount of its liability, as specified in the contract, and the burden is on the society to prove that a less amount would have been realized by an assessment." It would be difficult, if not impossible, for the beneficiaries in such contracts, or their representatives, to show the number of the assessable members of the society, and the amount that could be realized by an assessment upon them. These are facts within the peculiar knowledge of the society. Its books should show the number of its members, and they are in the posssession of its officers. If the members are such in numbers that an assessment would not produce the maximum, that fact ought to be in the knowledge of its officers, "and they should set it up in an answer, and make good the answer by proof, as they readily could, if true." Any other rule would make such contracts, as said in *Lueders* v. *Insurance Company*, 12 Fed. Rep. 465, "a mere delusion and snare." *Elkhart Mutual Ass.* v. *Houghton*, 103 Ind. 26; *Lueders* v. *Insurance Company*, 12 Fed. Rep. 465; Niblack, Accident Insurance and Benefit Societies (2 Ed.), §§ 340, 343, and cases cited; 2 Bacon, Benefit Societies and Life Insurance (2 Ed.), § 453.

The instructions asked for by the appellant were properly refused by the court.

For the errors indicated, the judgment of the circuit court is set aside, and the cause is remanded for a new trial.